UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CRIMINAL ACTION NO. 04-10305-WGY



**UNITED STATES OF AMERICA**

**v.**

**KEVIN APONTE**


**MEMORANDUM AND ORDER ON GOVERNMENT'S
MOTION FOR DETENTION**


**DECEMBER 17, 2004**


**BOWLER, Ch.U.S.M.J.**

On or about August 3, 2004, defendant Kevin Aponte (the "defendant") was arrested pursuant to a Criminal Complaint issued in this district on July 16, 2004, charging that the defendant did "having previously been convicted of a crime punishable by a term of imprisonment for a term exceeding one year, possess, in and affecting commerce, a firearm, to wit: a Glock, Model 19, 9mm semi-automatic pistol bearing an obliterated serial number" in violation of Title 18, United States Code, Section 922(g)(1).

1

On September 30, 2004, the Grand Jury returned a one count Indictment charging the defendant with being a felon in possession of a firearm with an obliterated serial number and ammunition in violation of Title 18, United States Code, Section 922(g)(1).

The defendant had his initial appearance before this court on August 3, 2004.  He was represented by court appointed counsel.  The government moved to detain the defendant pursuant to 18 U.S.C. §§ 3142(f)(1)(A), (f)(1)(D) and (f)(2)(A).

On August 6, 2004, this court conducted a detention hearing.  At the detention hearing the defendant was represented by court appointed counsel.  The government put forth one witness and the defendant called one witness.  At the conclusion of the hearing this court made a finding of probable cause and took the issue of detention under advisement.

On September 28, 2004, retained counsel filed an appearance on behalf of the defendant.  On November 10, 2004, defense counsel filed a motion for release from custody (Docket Entry # 14).  A hearing on the motion was conducted on December 14, 2008.  On December 15, 2004, after the defendant's mother was interviewed by Pretrial Services, defense counsel filed a motion to withdraw the motion for pretrial release (Docket Entry # 18), which was allowed by this court.  The matter of detention is now ripe for determination.

2

DISCUSSION

I.   A.   Under the provisions of 18 U.S.C. § 3142(c), "[t]he
judicial officer may not impose a financial condition that
results in the pretrial detention of the person."  Thus, a
defendant must be released under the provisions of 18 U.S.C. §
3142(b) or (c), or be detained pending trial under the
provisions of 18 U.S.C. § 3142(e) and after a hearing pursuant
to 18 U.S.C. § 3142(f).  See 18 U.S.C. § 3142(a).

        Under 18 U.S.C. § 3142(e), a defendant may be ordered
detained pending trial if the judicial officer finds one of the
following three conditions to be true that: (1) by clear and
convincing evidence, after a detention hearing under the
provisions of § 3142(f), ". . . no condition or combination of
conditions (set forth under 18 U.S.C. § 3142(b) or (c)) will
reasonably assure the safety of any other person or the
community . . .;" (2) by a preponderance of the evidence, after
a detention hearing under the provisions of 18 U.S.C. § 3142(f),
". . . no condition or combination of conditions (set forth
under 18 U.S.C. § 3142(b) or (c)) will reasonably assure the
appearance of the person as required . . .;" or (3) there is a
serious risk the defendant will flee.[1]  This determination is

---

[1] The distinction between the former and the latter are made clear by the very language of 18
U.S.C. § 3142(f).  In the last paragraph of that section, Congress has stated there must be clear
and convincing evidence to authorize pretrial detention when the question is whether any

made by the court at the conclusion of a detention hearing.

B.   The government is entitled to move for detention in a case that:

(1)  involves a crime of violence within the meaning of 18 U.S.C. § 3156(a)(4);[2]

(2)  involves an offense punishable by death or life imprisonment;

(3)  involves an offense prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the maximum authorized punishment is imprisonment

---

condition or combination of conditions "will reasonably assure the <u>safety of any other person and the community</u> . . .." (Latter emphasis added.) By not requiring that same standard <u>vis a vis</u> an assessment of risk of flight, it is clear that a lesser standard--i.e., preponderance of the evidence-- applied. That is precisely the holding in the Second Circuit. See <u>e.g.</u>, <u>United States v. Jackson</u>, 823 F. 2d 4, 5 (D.C.Cir. 1987); <u>United States v. Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir. 1986), <u>cert. dismissed</u>, 107 S.Ct. 562 (1986); <u>see also</u> <u>United States v. Patriarca</u>, 948 F.2d 789, 792 (1st Cir. 1991).

[2] Section 3156 of Title 18 of the United States Code defines a crime of violence as:

> (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

4

for ten years or more;[3] or

(4)  involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court <u>sua</u> <u>sponte</u> may move for, or set, a detention hearing where there is a serious risk of flight, or a serious risk of obstruction of justice or threats to potential witnesses.  <u>See</u> 18 U.S.C. § 3142(f).


C.  In determining whether there are conditions of release which will reasonably assure the appearance of the person and the safety of any other person and the community, this court must take into account:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the accused;
>
> (3) the history and characteristics of the person, including;

---

[3] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense--not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines.  <u>See</u> <u>United States v. Moss</u>, 887 F.2d 333, 336-7 (1st Cir. 1989).

(A) his character, physical and mental
condition, family ties, employment,
financial resources, length of residence in
the community, community ties, past
conduct, history relating to drug or
alcohol abuse, criminal history, and record
concerning appearance at court proceedings;
and

(B) whether, at the time of the current
offense or arrest, he was on probation, on
parole, or other release pending trial,
sentencing, appeal, or completion of
sentence for an offense under Federal,
State or local law; and

(4) the nature and seriousness of the danger to
any other person or the community that would be
posed by the person's release.

18 U.S.C. § 3142(g).

D.  The burden of persuasion remains with the government to

establish "that no condition or combination of conditions will

reasonably assure the appearance of the person as required and

the safety of any other person and the community."  The burden

then rests on the defendant to come forward with evidence

indicating that these general findings are not applicable to him

for whatever reason advanced.  The government must satisfy its

position with respect to risk of flight by a preponderance of

evidence and with respect to dangerousness by clear and

convincing evidence.  See supra footnote 3.  This court must

then weigh all relevant factors [set forth under §3142(g)] and

determine whether "any condition or combination of conditions

will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." The decision is an individualized one based on all relevant factors. <u>United States v. Patriarca</u>, 948 F.2d 789, 794 ( Cir. 1991); <u>see</u> <u>United States v. Jessup</u>, 757 F.2d 378, 387-88 (1st Cir. 1985).

Moreover, one may be considered a danger to the community even in the absence of a finding by clear and convincing evidence that the accused will engage in <u>physical violence</u>. Conversely, as noted by the Committee on the Judiciary (Report of the Committee on the Judiciary, United States Senate), on S. 215.

98th Congress, Report No. 98-147 (May 25, 1983):

> The concept of defendant's dangerousness is described throughout this chapter by the term "safety of any other person or the community." The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger <u>that the defendant might engage in criminal activity to the detriment of the community</u>. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.... The Committee also <u>emphasizes</u> that the risk that a defendant will <u>continue to engage</u> in drug trafficking constitutes a danger to the "safety of any other person or the

      community."

_Id_. (Emphasis added; footnotes omitted); _see_ <u>United States v.</u>
<u>Patriarca</u>, 948 F.2d 789, 792, n.2 (1st Cir. 1991) (danger to
community does not refer only to risk of physical violence); <u>see</u>
<u>also</u> <u>United States v. Tortora</u>, 922 F.2d 880, 884 (1st Cir. 1990)
(stating danger in context of 18 U.S.C. § 3142(g) not meant to
refer only to physical violence); <u>United States v. Hawkins</u>, 617
F.2d 59 (5th Cir.), <u>cert. denied</u>, 449 U.S. 962 (1980)
(trafficking in controlled substances).[4]

    The issue critical to determining whether to detain a
defendant is therefore, whether, with respect to the defendant,
based on the guidelines set forth <u>supra</u> in part C of this Order,
any condition or combination of conditions of release exist that
will reasonably assure the safety of any person and the
community; and the presence of the defendant.  18 U.S.C. §
3142(e).


    E.  Further, the judicial officer must consider whether the

---

[4] A defendant may be ordered detained as a danger to the safety of another or to the community, however, only if the judicial officer determines that a detention hearing is appropriate under the provisions of 18 U.S.C. § 3142(f)(1)(A) through 3142(f)(1)(D).  That is to say, even if a detention hearing is appropriate under 18 U.S.C. § 3142(f)(2)(A) through 3142(f)(2)(B) [for risk of flight or danger of obstruction of justice or intimidation of witnesses], danger to the community is not a basis upon which a defendant may be ordered detained prior to trial, unless the government has moved under 18 U.S.C. § 3142(f)(l), and the judicial officer has determined that a hearing is appropriate under that latter section.  See <u>United States v. Ploof</u>, 851 F.2d 7 (1st Cir. 1988).

crime charged is a "crime of violence" within the meaning of 18 U.S.C. § 3156 where the government has raised 18 U.S.C. § 3142 (f)(1)(A) as a basis for pretrial detention.  Thus, where the government moves for pretrial detention "on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in § 3142(f)(1)," United States v. Ploof, 851 F.2d 7, 11 (1st Cir. 1988), which, in this instance, involves the circumstance of whether the offense in the case at bar is a "crime of violence" under § 3142(f)(1)(A).

Cases establish that the circumstances in which a defendant committed a particular offense do not determine whether the crime of which the defendant is accused is a "crime of violence" as defined in 18 U.S.C. § 3156(a)(4).  Rather, this court must categorically examine the nature of the offense to determine whether it is or is not a "crime of violence" within the meaning of 18 U.S.C. § 3142(f)(1)(A).  See United States v. Johnson, 704 F.Supp. 1398, 1400 (E.D. Mich. 1988) (recognizing that each "generic offense must be categorized as either a 'crime of violence' or not a crime of violence" under Bail Reform Act); see also United States v. Bell, 966 F.2d 703, 706 (1st Cir. 1992) (adopting categorical approach to assess whether offense is "crime of violence" under sentencing guidelines).

The Bail Reform Act's definition of the term "crime of violence" is twofold.  An offense is a "crime of violence" if it

9

is:

    (A) an offense that has as an element of the offense the use, or attempted use, or threatened use of physical force against the person or property of another, or

    (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

    The sentencing guidelines define the term "crime of violence" in a manner which is similar to the definition of the term in the Bail Reform Act, 18 U.S.C. § 3156(a)(4)(B).[5]

    This court finds that the offense charged in the Indictment constitutes a "crime of violence" within the meaning of the Bail Reform Act, 18 U.S.C. § 3142(f)(1)(A).

II. The defendant, Kevin Aponte, is 25 years of age. He was born in Stoughton, MA on November 7, 1978 and has been a lifelong resident of Massachusetts. He dropped out of high school in the eleventh grade.

    The defendant's mother and his nine siblings all reside in

_____

[5] The sentencing guidelines define a "crime of violence" as a felony that:

    (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

    (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or <u>otherwise involves conduct that presents a serious potential risk of physical injury to another</u>.

U.S.C.A. § 4B1.2(1) (emphasis added).

Brockton.  The defendant has never met his father.  The defendant is single and he has a one year old daughter, who lives with her mother, Kory Cordaro.  The defendant told Pretrial Services that he provides food and clothing for the child when he is able.  He is not under any court order to provide child support.

At the time of his arrest the defendant was living in Brockton at the apartment of his girlfriend, Elizabeth DePina ("Ms. DePina").  Ms. DePina has a five year old daughter from a previous relationship.  Prior to living with Ms. DePina the defendant resided in Brockton with his mother.  The Pretrial Services report notes that on the advice of counsel the defendant did not answer questions regarding whether he maintained other residences.  The report notes that Choicepoint and the Registry of Motor Vehicles both list additional addresses for the defendant in Brockton.

The defendant's only employment history consists of a ten month period in 2002 when he worked as a laborer for M & E Construction.  The defendant denies any assets and reports $2,000 in credit card debt.

The defendant told the Pretrial Services officer that he began to smoke marijuana on a daily basis at the age of 13, when he also commenced the use of alcohol on weekends.  He also noted that after being released from prison in 2002 he started using

ecstasy (MDMA) on a daily basis.  He has completed one drug treatment program.

The defendant has a prior criminal record.  As a juvenile he was adjudicated delinquent for malicious destruction of property and attempting to commit a crime.

As an adult he has convictions for robbery, burglary, assault and battery to collect a loan, disturbing the peace, assault with a dangerous weapon, assault with a dangerous weapon, breaking and entering in the day with the intent to commit a felony, possession with intent to distribute a Class D controlled substance, assault and battery with a dangerous weapon, armed assault, knowingly receiving stolen property and possession of a firearm.

In addition he has open cases for possession of a Class D controlled substance, possession of a controlled substance in a school zone, possession with intent to distribute a Class B controlled substance and a firearm violation.


III.  The relevant evidence at the detention hearing showed the following.

The government called Special Agent Sheila O'Hara ("O'Hara") of the Bureau of Alcohol, Tobacco and Firearms ("ATF") of the United States Department of the Treasury.  She testified that she has been employed by ATF for over 17 years.

O'Hara noted that she is the case agent assigned to the defendant's case, but explained that she was not the affiant on the Criminal Complaint because of a "timing issue."  O'Hara adopted the affidavit of her partner, ATF Special Agent Jody Minick ("Minick"), as true and accurate.  The affidavit was admitted as Government Exhibit # 1.

According to O'Hara, the Brockton Police Department ("BPD") received information from a confidential informant that the defendant was distributing drugs.  As a result of the information the BPD sought two search warrants.  The first search warrant was for the second floor apartment at 580 Ash Street in Brockton, which was believed to be the defendant's residence.  The second warrant was for a Lexus registered to the defendant.  The BPD planned to execute the warrants on April 8, 2004.

On that date BPD Detective McDermott ("McDermott") was surveilling 580 Ash Street in anticipation of the execution of the search warrant when the defendant arrived driving his Lexus. He exited from the vehicle and entered 580 Ash Street.  After a few minutes he exited from 580 Ash Street and entered the Lexus, which then proceeded to the parking lot of a nearby Burger King, where the Lexus parked next to a black car.  McDermott then observed what appeared to be a transfer of something from the defendant to the person in the black vehicle.  Law enforcement

officers then approached the vehicle armed with search warrant for it.

As the defendant was being removed from the Lexus, two small bags fell from his person. They field tested positive for cocaine. The defendant was arrested and a subsequent search of the Lexus revealed two cellular telephones and approximately $865 in cash. According to Minick's affidavit, the cash was recovered from the defendant's pocket.

In further testimony O'Hara stated that the Lexus and the defendant were driven to 580 Ash Street. A key on the car's key ring was used to enter the second floor apartment at 580 Ash Street after no one responded to knocks at the door. The apartment was described as a small one bedroom apartment containing male clothing. Among the items found in the apartment were used sandwich bags, a scale, Glad zip lock bags and a small amount of what appeared to be crack cocaine. Later examination by the Massachusetts Department of Public Health Laboratory confirmed the presence of cocaine.

The search also revealed a Sentry safe containing a digital scale. The search also resulted in the recovery of a Glock semiautomatic 9mm pistol with an obliterated serial number, which was located in the pocket of a grey extra large sweatshirt hanging in the closet. The gun was loaded with 15 rounds of ammunition. O'Hara noted that the gun was not manufactured in

14

Massachusetts.

In further testimony O'Hara noted that the utilities for the apartment are subscribed to in the name of the defendant. She added that no other paperwork was found in the apartment indicating that any other individual resided at the same address.

O'Hara testified that she reviewed the defendant's prior criminal record.  She noted that the defendant's criminal record reflects a 1998 felony conviction for armed assault for which he received a sentence of five years.

On cross examination it was established that O'Hara has never been in the Ash Street apartment.

The defendant called Elizabeth Garcia DePina, who resides at 38 Beach Street in Brockton.  She stated that she has known the defendant, who is her boyfriend, for one year.  She added that she is employed as a real estate consultant in So. Easton, MA.

Ms. DePina testified that she posted a certified bank check for the $15,000 bail for the defendant when he was charged in Brockton as the result of his April 8, 2004 arrest described above.  She identified a copy of the bail slip, dated July 13, 2004, which was admitted as Defendant's Exhibit # A.  This court notes that the address Ms. DePina provided on the slip is 24 Benny Lane, Apt. # 12, Mansfield.  Ms. DePina added that the

15

defendant has been residing with her since being released in July.

On cross examination it was established that prior to his arrest the defendant was dividing his time between his mother's residence on Hill Street in Brockton and the Ash Street apartment.

At the hearing on December 14, 2004, defense counsel did not produce any new evidence. He urged that the defendant be released on an electronic bracelet to the custody of his mother, who was present in court. This court directed Pretrial Services to interview the defendant's mother to determine her suitability as a third party custodian. The Pretrial Services officer stated on the record that he remains opposed to release of this defendant.

On December 16, 2004, Pretrial Services provided this court with a report in regard to the interview conducted to determine the suitability of the defendant's mother to serve a potential third party custodian. After being advised that the defendant's mother resides in subsidized housing, Pretrial Services determined that she cannot serve as a third party custodian.

IV. The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A), (f)(1)(D) and (f)(2)(A). The government must prove by clear and convincing evidence that if

released the defendant would pose a serious danger to any person or the community.

In contradistinction, with regard to risk of flight the court need only find by a preponderance of evidence that the defendant, if released, constitutes a serious risk of flight or failure to appear.  The two different standards are used because of the clear language expressed in the last paragraph of 18 U.S.C. § 3142(f) which states "that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."  Congress, by not attaching that language to the risk of flight clause, infers that a lower standard of proof is all that is necessary to establish the government's case.


A. <u>Danger to the Community</u>

This court first addresses the likelihood that the defendant, if released, would be a danger to another person or the community.

The weight of the government's case against the defendant is substantial.  A loaded firearm was found in the defendant's apartment.  The defendant was observed in his apartment shortly before the execution of the search warrant which resulted in the recovery of the firearm.  There was no evidence or testimony

which would suggest that anyone else resided in the apartment.

Although the defendant has not been charged with a drug crime, this court must consider the circumstances of the his arrest.  His conduct strongly suggests that he was involved in some type of drug transaction.  The circumstances of the quick stop at the Ash Street apartment, where drug paraphernalia was recovered shortly thereafter, the rendezvous in a public parking lot and the presence of over $800 in cash and cocaine on the unemployed defendant all point in the direction of drug related activity.

At the very time these events occurred the defendant was on pretrial release on a drug case in the Brockton District Court. It would appear that the defendant in unable to refrain from drug related conduct, even while on pretrial release in the state system.

Even more disturbing to this court is the fact that the defendant has a prior firearm conviction.  Although the defendant has prior drug and firearm convictions, he apparently elected to revert to guns and drugs despite being placed on conditions of release in the state court.  This court does not believe that the defendant will abide by any conditions of release which could be framed.

Based on the totality of the evidence the government has satisfied this court by clear and convincing evidence that no

18

condition or combination of conditions will reasonably assure
the safety of any person or the community if the defendant is
released.

B. <u>Risk of Flight</u>

Next, this court turns to risk of flight.

The defendant's criminal record reflects one default and
two probation violations.  Since being released from state
custody it appears that the defendant has been living a somewhat
itinerant lifestyle.  He has been unemployed and there has been
testimony that he waw residing intermittently at three different
locations.  By his own admission the defendant began using
ecstasy in 2002 and has been using it on an almost daily basis.
This court does not believe that the defendant can be relied
upon to appear as required.

Based on the totality of the circumstances this court finds
by a preponderance of the evidence that there is no condition or
combination of conditions that will assure the appearance of the
defendant as required.

V. <u>Conclusion</u>

The government has satisfied this court by clear and
convincing evidence that no condition or combination of
conditions of release set forth under 18 U.S.C. § 3142(b) or (c)

will reasonably assure the safety of any other person or the
community if the defendant is released.  In addition, this court
has found, at least by a preponderance of the evidence, that
there is no condition or combination of conditions that will
assure the appearance of the defendant as required.

Having evaluated the factors set forth in 18 U.S.C. §
3142(g), this court orders the defendant detained subject to the
following conditions:

>    (1)  The defendant be, and hereby is, committed
>    to the custody of the Attorney General for
>    confinement in a corrections facility, separate,
>    to the extent practicable, from persons awaiting
>    or serving sentences or being held in custody
>    pending appeal;

>    (2)  The defendant be afforded reasonable opportunity
>    for private consultation with his counsel; and

>    (3)  On Order of a court of the United States or on
>    request of an attorney for the Government, the person
>    in charge of the corrections facility in which the
>    defendant is confined deliver the defendant to an
>    authorized Deputy U.S. Marshal for the purpose of any
>    appearance in connection with a court proceeding.


/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
Chief United States Magistrate Judge